UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| NIPPON YUSEN KABUSHIKI KAISHA, | CIVIL ACTION |
| Plaintiff, | CASE NO. 3:20-cv-00588-SDD-SDJ |
| v. | CHIEF JUDGE SHELLY D. DICK |
| RIVERSIDE NAVIGATION LTD., GLORY RIVERSIDE NAVIGATION LTD., ACTIVE DENIZCILIK VE GEMI ISLETMECILIGI A.S., AND ACTIVE SHIPPING & MANAGEMENT PTE LTD., | MAGISTRATE JOHNSON IN ADMIRALTY |
| Defendants. | |

## AMENDED VERIFIED COMPLAINT

**COMES NOW**, Plaintiff NIPPON YUSEN KABUSHIKI KAISHA (hereinafter "NYK" or "Plaintiff"), by undersigned counsel, and files this Amended Verified Complaint against Defendants RIVERSIDE NAVIGATION LTD. ("Riverside"), GLORY RIVERSIDE NAVIGATION LTD. ("Glory Riverside"), ACTIVE DENIZCILIK VE GEMI ISLETMECILIGI A.S., and ACTIVE SHIPPING & MANAGEMENT PTE LTD. ("Active") (collectively the "Defendants"), and aver and pleads as follows:

### JURISDICTION, VENUE AND PARTIES

1. Subject matter jurisdiction of this Honorable Court is based upon admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333 and is brought under the provision of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims. This case is also an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure for claim of breach of a maritime contract.

2. Jurisdiction and venue are proper in this matter pursuant to 33 U.S.C. §

1

1391(b)(2), as an asset of the Defendants that may be attached by process of maritime attachment and garnishment under the provisions of Rule B, *i.e.* the M/T RIVERSIDE (IMO 9412464) is, or will be during the pendency of this matter, located within the Middle District of Louisiana.

## THE PARTIES

3.  At all times material hereto, Plaintiff NYK, was and still is a foreign company organized under the laws of Japan.

4.  At all times material hereto, Defendant Riverside was and still is a foreign company incorporated under the laws of the Marshall Islands.

5.  At all times material hereto, Defendant Glory Riverside was and still is a foreign company incorporated under the laws of Malta.

6.  At all times material hereto, Defendant Active was and still is a foreign company incorporated under the laws of foreign states. Its principal place of business is located at Dudullu OSB Mahallesi, 2. Cadde No 5 Ümraniye 34776 Istanbul, Turkey. Active also has a listed address at "16 Raffles Quay #43-01, Hong Leong Building Singapore," however that address is actually the Head Office of Thome Group, technical ship managers for certain vessels within the Active fleet of vessels.

## I. THE SUBSTANTIVE CLAIMS

7.  On or about June 20, 2018, Plaintiff NYK entered into a time charter party agreement for use of the M/V CAPE PROVIDENCE with the registered owner of the M/V CAPE PROVIDENCE, "Providence Navigation Ltd." The agreement was for a period of 9-12 months, which was later extended by the parties to include an additional 15 months for a total of 27 months. The charter party agreement expressly incorporated the amended NYPE

2

1946 form charter and rider clauses dated 21 December 2017 in respect of the M/V CAPE SPENCER. The charter agreement between NYK and Providence Navigation Ltd. set forth specific terms, rights, and obligations between the parties. *See* Charter Party, **Exhibit 1**.

8.     The June 20, 2018 charter party agreement is a maritime contract.

9.     At all relevant times notices and contact details for the Owners of the Vessel, was listed as Care Of the Istanbul Liaison Office, *i.e.* Active located in Istanbul, Turkey. *See* **Exhibit 1**.

10.    The parties agreed to the arbitration of disputes arising out of the maritime contract in London with English law to apply. *Id*.

11.    Plaintiff NYK duly complied with all obligations under the terms of the charter party agreement.

12.    On or about December 5th 2019, at the request of Providence Navigation Ltd., the charter party agreement was amended pursuant to a novation agreement wherein the "ownership of the vessel" was changed to Riverside Navigation Ltd. A copy of the December 5, 2019 Novation Agreement is attached as **Exhibit 2**.

13.    Riverside assumed all obligations and liabilities of the charter party agreement. *Id*.

14.    The same individual, Mehmet Ali Umur signed as "Director" on behalf of both Providence Navigation Ltd. and Riverside Navigation Ltd.

15.    Prior to the signing of the Novation Agreement, Captain Gurol Zorer, the Fleet Manager for Active, stated that the basis for changing the terms and conditions of the CAPE PROVIDENCE charter party agreement was for the following reasons:

> "We have our financing and covenant requirements coming up shortly and would need to take action accordingly. We would like to cancel the current charter-party

and agree to a new agreement with exactly the same terms, where we have "Riverside Navigation Ltd." as the counter-part instead of "Providence Navigation Ltd.". **This would give us the chance to finance ourselves through our vessel Riverside**. Please find below the details of Riverside Navigation Ltd. accordingly. . ."

A copy of the email exchange is attached hereto as **Exhibit 3**. (emphasis added).

16. Captain Gurol Zorer's signature block provides contact details for Active at the Istanbul address and telephone numbers with a "90" country code for Turkey.

17. On or about December 2, 2019, the "Owners" further clarified that the reasoning for the novation agreement and change in Ownership name on the charter party agreement was due to: "the requirement of the Financiers' of the Owner. The Financiers would like to lend funds to the Owners with a different company, in this case Riverside Navigation Ltd. The Owners are happy to keep the same terms and commitments which they have agreed to however would like to do this through a different company in order to satisfy the requirements of the Financiers. The need for a new company is asked by the Financiers because of their internal requirements for which the Owner would like to comply."  A copy of the correspondence explaining the purported grounds by Defendant Active to change the charter party agreement is attached hereto as **Exhibit 4**.

18. On or about March 13, 2020, the M/V CAPE PROVIDENCE was arrested at the Port of Saldanha on 13 March 2020 by Nassau Maritime Holdings Designated Activity Company, the mortgagee of the Vessel.  The M/V CAPE PROVIDENCE remained under arrest for nearly six (6) months.  A copy of the warrant of arrest is attached hereto as **Exhibit 5**.

19. As a result of the arrest of the Vessel and Owners' failure to post timely substitute security and/or obtain the release of the M/V CAPE PROVIDENCE, Plaintiff NYK

4

was caused significant damages, lost profits, costs, and expenses as a result of the loss of use of the Vessel and the inability of NYK to complete various other contractual obligations with third-parties while the Vessel was under seizure by the South African Court, all of which was a breach of the Charter Party Agreement.

20. Consistent with Clause 55 of the charter party agreement, NYK exercised its right to cancel the balance of the charter party, if the vessel has been arrested and/or seized for one hundred and twenty (120) days or more. As of July 12, 2020, the arrest had lasted for a period of one hundred and twenty-one (121) days. *See* Exhibit 1.

21. At the time of the cancellation of the charter party, NYK was entitled to the value of the bunkers consumed onboard the vessel during the period of off-hire while the vessel was under arrest and the bunkers remaining onboard which belonged to NYK at the time of cancellation. The total value of the bunkers remaining onboard which is due and owing to NYK is $1,481,301.66.

22. In addition, as a result of the arrest of the M/V CAPE PROVIDENCE, NYK's sub-charterers cancelled the voyage charter party agreement which the vessel was unable to perform. NYK suffered losses and damages of $722,426.73 as a result of the cancelled voyage charter party.

23. Finally, during the time that the M/V CAPE PROVIDENCE was on charter, the vessel underperformed and overconsumed bunkers during at least two (2) voyages. NYK claims damages of $150,948.18 in respect of the losses suffered due to breaches of the Vessel's performance warranties set out in the charter party agreement.

24. Plaintiff's damages are estimated to be no less than $2,354,676.57 as a result of the arrest of the M/V CAPE PROVIDENCE and Plaintiff NYK files this action to obtain

security and jurisdiction over Defendants consistent with Supplemental Rule B.

25. As Defendant Riverside has breached the charter party agreement with NYK and was identified by Active as the Owners of the M/T RIVERSIDE (presently within the Middle District of Louisiana), the M/T RIVERSIDE may be attached and seized as security for Plaintiff's maritime claim.

## II.  CORPORATE IDENTITY AND ALTER-EGO LIABILITY

26. Plaintiff restates and re-alleges paragraphs 1 – 25 in the above foregoing Verified Complaint as if set forth herein.

27. The alter ego doctrine applies when (1) the owner exercised complete control over the corporation with respect to the transaction at issue and (2) such control was used to commit a fraud or wrong that injured the party seeking to pierce the veil.

### A.    Domination and Control

28. Defendant Active exercises complete control over Defendants Riverside, Glory Riverside, Providence Navigation Ltd., and several other single purpose shell companies which serve as the nominal registered owners of the Vessels in the Active fleet.

29. Notwithstanding their nominal, formal separate incorporation, the Defendants are in actual fact a single business entity pursuing functionally differentiated business objectives through nominally separate business structures but always subject to the command and control of Mr. Mehmet Ali Umur, the Chairman and Owner of Active.

30. Upon information and belief, Defendant Active was established by, and is owned by, Mr. Umur.

31. Defendant Active has a fleet of four (4) bulk carrier vessels consisting of the M/V CAPE PROVIDENCE, M/V CAPE SPENCER, M/V CAPE NORTHVILLE, and M/V

6

CAPE LAMBERT. Defendant Active also has a fleet of five (5) tanker vessels, including the M/T RIVERSIDE, M/T FAIR SEAS, M/T NORDIC THUNDER, M/T PACIFIC SKY, and M/T SOUTHPORT. A copy of the website listing Active's fleet of vessels, available at www.activeshipping.com.sg is attached hereto as **Exhibit 6**.

32. Each of the above-referenced vessels is nominally owned by a different entity. To wit, the registered owner of the M/V CAPE PROVIDENCE is listed as "Providence Navigation Ltd." and the registered owner of the M/T RIVERSIDE was listed as "Riverside Navigation Ltd." for nearly ten (10) years, but has recently been changed to "Glory Riverside Navigation Ltd." *See* documents attached hereto as **Exhibit 7**.

33. Mr. Umur, through his ownership of Defendant Active, has complete dominion and control over the individual vessel owning entities; such that Defendant Active is the true beneficial owner of each of the vessels in the fleet, including the M/T RIVERSIDE.

34. Critically, Defendants' Active and Riverside held themselves out as the "owner" of the M/T RIVERSIDE during the negotiation of the novation agreement for the M/V CAPE PROVIDENCE in November and December 2019. *See* **Exhibits 3-4**.

35. This despite the fact that the "registered ownership" of the M/T RIVERSIDE may have been changed at least twice in the past eighteen (18) months, first to "Afra Riverside LLC" and then to "Glory Riverside Navigation Ltd."

36. The purported "ownership changes" however are nothing more than misleading and/or fraudulent corporate shuffling and at all material times, the actual and beneficial owners of the M/T RIVERSIDE were Defendants Riverside and Active.

37. Though Defendants comprise nominally separate corporate business / legal entities, their ownership and control is so intertwined and fused that they are distinct from one

another merely as a matter of formality.

38. As is pled more specifically below, Defendants Riverside and Glory Riverside are nothing more than mere alter egos of Active, as all three (3) Defendants are members of a group of companies subject to the complete control and domination of Mr. Umur. Mr. Umur (and/or his family members) are believed to be the beneficial owners, officers, and directors of Riverside, Glory Riverside, and other single purpose entity companies.

39. Even though each vessel in the fleet of Active was registered in the name of an individual one-ship-company, Active has beneficially owned and operated these vessels as assets of a single business enterprise; and the purported corporate independence of the respective vessel owners was simply fictitious, as they were entirely subjugated to Active's business goals and policies.

40. For example, the mortgage of the M/V CAPE PROVIDENCE, identifies the single purpose vessel owners (including Providence Navigation Ltd) as joint and several borrowers under the loan agreement. A copy of the mortgage is attached as **Exhibit 8**, see page 2.

41. Each of the "companies" identified and appointed the same person, Mr. Umur as the "attorney-in-fact" to sign on behalf of each borrower. *Id*., at p. 102.

42. In addition, Mr. Umur was listed as the Guarantor under the loan. *Id*., at p. 30. The address provided was at his "place of business" at the same address for Active in Istanbul, Turkey. *Id*.

43. Each of the single purpose entity companies were jointly and severally liable for the loan obligations and Mr. Umur, as guarantor, agreed to guarantee all liabilities in the financial documents. *Id*. Such guarantees were given without compensation or an arms-length contract

because Providence Nagivation Ltd., just like all other single purpose entities in the Active fleet, is owned, dominated, and/or controlled by Mr. Umur.

44.     Pursuant to Section 30, of the mortgage agreement, all notices or communications to the brass-plate shell companies listed as the "borrowers" in the mortgage and loan agreements were to be made to Active's Istanbul address, *i.e.* the same address as Mr. Umur as guarantor. *Id*., at p. 65.

45.     Accordingly, the mortgage and loan facility further establishes Active and Mr. Umur as the actual beneficial owners of the M/V CAPE PROVIDENCE and the other Vessels listed within the Active Fleet. *Id*.

46.     Defendants Riverside and Glory Riverside (and Providence Navigation Ltd) have no office, no phone number, no employees, no staff, and no identifiable presence. They are shell companies which Active and Mr. Umur operate from Active's Istanbul offices.

47.     Defendant Active regularly holds itself out to the maritime industry as being the owning company which acquires, operates, and owns all vessels within the commonly managed and operated fleet. *See* **Exhibits 3-4, 6-7**.

48.     Although each vessel in the fleet of Active is registered in the name of an individual one-ship company, Mr. Umur, directly and/or indirectly, by and through Active, beneficially owns and operated these vessels, including the M/V CAPE PROVIDENCE and M/T RIVERSIDE as assets of a single business enterprise.

49.     The purported corporate independence of the respective vessel owners is simply fictitious, as they are entirely subjugated to business goals and practices of Active and Mr. Umur. The finances and business activities of the Defendants are so intertwined and there exists such a unity of ownership and interest between them that no separation exists.

50. Accordingly, Defendants are mere alter-egos of each other subject to the complete domination and control of Active by and through Mr. Umur.

### B. Fraud in the Underlying Transaction

51. Defendant Active used its control over Defendants Riverside and Glory Riverside to fraudulently induce Plaintiff into entering into the novation agreement to change the contractual counterpart on the M/V CAPE PROVIDENCE charter party agreement. *See* Exhibits 1-4.

52. Defendant Active falsely represented to Plaintiff that the M/V CAPE PROVIDENCE was seaworthy and in compliance with all international regulations and applicable mortgage agreements.

53. Defendant Active had knowledge that the loan payments had not or were not being timely remitted such that the M/V CAPE PROVIDENCE was at risk for arrest and attachment by the mortgage holder of the Vessel.

54. Defendant Active had or should have had knowledge that the representations made to Plaintiff were false, and that the M/V CAPE PROVIDENCE would be seized by the Vessel's mortgage holder to foreclose on their preferred ship mortgage due to failure to pay on the outstanding loan.

55. Defendants knew or should have known of the material risks for seizure of the Vessel due to the shuffling of corporate assets, changing of registered shell companies for various Vessels within the Active fleet, and other steps taken to obfuscate the applicable contractual obligations which Defendants owed to various financiers and lenders.

56. Defendants Active and Riverside made these misrepresentations in order to continue to obtain Plaintiff's business and continue to receive NYK's hire payments for the use of the M/V CAPE PROVIDENCE.

57. Defendants now intend to operate its remaining vessels, including the M/T RIVERSIDE with impunity, as Defendants attempt to hide behind the various shell owning companies without providing Plaintiff with payment or security for the significant damages and losses caused by Defendants.

58. By reason of the relationship of complete dominion and control that Defendant Active has exercised over its subsidiaries Riverside and Glory Riverside, taking into consideration the foregoing facts and circumstances, it would be just, equitable and proper for the Court to pierce the corporate veil so that the vessel M/T RIVERSIDE may be attached with process of maritime attachment and garnishment as a source of security for Plaintiff's breach of charter party claim.

### III. APPLICATION FOR ATTACHMENT
### UNDER SUPPLEMENTAL ADMIRALTY RULE B

59. Plaintiffs restate and re-alleges paragraphs 1 –58 in the above foregoing Verified Complaint.

60. Plaintiffs' claim against Defendants for breach of the charter party agreement is a maritime claim. This is an ancillary proceeding to secure jurisdiction and security over Defendants. Plaintiff has commenced arbitration in London, consistent with the parties' charter party agreement.

61. Defendants are not present and cannot be found in the District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Law Claims. *See* Affidavit of Attorney Daphne P. McNutt attached as **Exhibit 9**.

62. Notwithstanding, the Defendants have within the District tangible personal property comprised of the M/T RIVERSIDE, which is subject to attachment as security for Plaintiffs' claims.

11

63. Interest, costs, and attorney's fees are routinely awarded to the prevailing party under English Law and the procedural rules of London arbitration. It is standard for interest to be awarded to the prevailing party in the amount of 5.0%, compounded quarterly.

64. Plaintiffs expect to recover the following amounts in arbitration from Defendants:

|   |   |   |
|---|---|---:|
| A. | Principal Claim | $2,354,676.00 |
| B. | Estimated Interest for Principal Claim:<br>*2 years at 5.0 %, compounded quarterly* | $246,030.00 |
| C. | Arbitration Cost: | $250,000.00 |
| D. | Estimated Attorney's Fees: | $400,000.00 |
|   | **TOTAL:** | **$3,250,706.00** |

65. Therefore, Plaintiffs' total claim for breach of the charter party, plus applicable interest, costs, and fees in the aggregate estimated to be no less than **$3,250,706.00.**

**WHEREFORE PREMISES CONSIDERED**, Plaintiffs pray as follows:

A. That process in due form of law, according to the practice of this Honorable Court in matters of admiralty and maritime jurisdiction be issued against Defendants and said Defendants be cited to appear and answer the allegations of this Amended Verified Complaint;

B. That if Defendants cannot be found within this district, then all of their respective tangible or intangible property within this district, including the M/T RIVERSIDE, her engines, boilers, tackle, apparel, and all necessary appurtenances thereto, as well as debts, credits, or effects including but not limited to accounts, checks, disbursement advances, payments, property on board the M/T RIVERSIDE, owned by the said Defendants or in the hands or control of persons named as garnishees in the Process of Maritime Attachment and Garnishment be attached and seized pursuant to Supplemental Admiralty Rule B for Certain Admiralty and Maritime Claims;

      C.      That, if Defendants fail to appear and answer the Rule B Attachment, a judgment be entered against the Defendants in the sum of **$3,250,706.00** and the proceeds of the assets attached be applied in satisfaction thereof;

      D.      That the Plaintiff have such other, further, and different relief as the Court deems just, proper, and equitable.

Dated: September 10, 2020
       New Orleans, Louisiana       Respectfully submitted,

                          /s/ Daphne P. McNutt
                          Daphne P. McNutt (#20292)
                          Stephen R. Barry (#21465)
                          W. Briggs Scott (#36013)
                          Barry & Co., LLC
                          612 Gravier Street
                          New Orleans, LA 70130
                          dmcnutt@barrylawco.com
                          Telephone: (504) 525-5553
                          Facsimile: (504) 505-1909

                          *Attorneys for Plaintiff Nippon Yusen Kabushiki Kaisha*

*Of Counsel*
CHALOS & CO, P.C.
Briton P. Sparkman
*Pro Hac Vice Application Forthcoming*
*Attorney for Plaintiff*
7210 Tickner Street
Houston, Texas 77055
Telephone: (516) 714-4300
Email: bsparkman@chaloslaw.com