UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**NIPPON YUSEN KABUSHIKI KAISHA**　　　　　**CIVIL ACTION**

**VERSUS**　　　　　**NO. 20-588-BAJ-SDJ**

**RIVERSIDE NAVIGATION, LTD, et al.**

## ORDER

Before the Court is Plaintiff, Nippon Yusen Kabushiki Kaisha's ("NYK"), *Motion to Compel Depositions and Responses to Requests for Production of Documents* (R. Doc. 54). Defendant Glory Riverside Navigation, Ltd. ("Glory Riverside"), has filed an opposition (R. Doc. 57). NYK filed a reply (R. Doc. 58). For the reasons explained herein, NYK's motion is **GRANTED IN PART and DENIED IN PART**.

I.　**Procedural Background**

On September 8, 2020, NYK filed a Complaint seeking to invoke the Court's admiralty jurisdiction under 28 U.S.C. § 1333 and attach the vessel M/T Riverside pursuant to Supplemental Admiralty Rule B.[1] A Maritime Attachment and Garnishment Order was issued and served on the M/T Riverside on September 10, 2020.[2] On September 14, 2020, Defendant Glory Riverside deposited substitute security pursuant to Supplemental Admiralty Rule (5)(a), and the M/T Riverside was released from attachment.[3]

On September 10, 2020, NYK filed an *Amended Complaint*, which included an alter-ego theory of liability.[4] On January 22, 2021, Glory Riverside filed a *Motion to Vacate Rule B*

---

[1] R. Doc. 1.
[2] R. Docs. 9, 13, 21.
[3] R. Docs. 15, 17, 18.
[4] R. Doc. 14.

*Attachment and to Dismiss the Verified Complaint*, along with supporting documentation.[5] Glory Riverside argues that the M/T Riverside is owned by Glory Riverside, and not by Riverside Navigation, Ltd., who was the party to NYK's underlying breach of contract claim.[6] NYK filed an opposition to the *Motion to Vacate*, attaching additional documents it contends support the theory that an entity it refers to as "Active" is the true owner of the M/T Riverside.[7] At the same time, NYK filed a *Motion for Discovery*, requesting jurisdictional discovery on its alter-ego theory.[8] Glory Riverside opposed NYK's request for discovery, contending the factual information supplied in its *Motion to Vacate* refutes NYK's alter-ego allegations.[9]

The District Judge held a hearing on the *Motion to Vacate* on March 9, 2021, after which the parties' arguments were taken under advisement.[10] On March 12, 2021, the District Judge issued an Order granting NYK's *Motion for Discovery*, allowing "limited discovery in this matter in a manner to be prescribed by the Magistrate Judge."[11] A series of discovery conferences were held.[12] The parties' failure to comply with the Court's orders to meaningfully confer was noted.[13]

On July 9, 2021, NYK filed a *Motion to Compel* the corporate deposition of Glory Riverside, the deposition of Halim Umur, and complete responses to its Requests for Production of Documents.[14] Glory Riverside filed an opposition, arguing NYK's discovery requests are beyond the scope of appropriate jurisdictional discovery.[15]

---

[5] R. Doc. 31.
[6] The *Motion to Vacate* refers to Active Denizcilik and Active Shipping & Management collectively as "Active Shipping" based on a contention that NYK did so it its *Amended Complaint*. However, the *Amended Complaint* refers to the entity "Active" but never identifies whether "Active" is a moniker for the two named parties that include the word "Active" or some other entity.
[7] R. Doc. 34.
[8] R. Doc. 35.
[9] R. Doc. 37.
[10] R. Doc. 41.
[11] R. Doc. 42.
[12] R. Docs. 44, 46, 48, 52.
[13] R. Doc. 48.
[14] R. Doc. 54.
[15] R. Doc. 57.

## II.     Allegations in Amended Complaint

NYK names the following entities as defendants in the *Amended Complaint*: Riverside Navigation, Ltd. ("Riverside Navigation"), Glory Riverside Navigation, Ltd., Active Denizcilik ve Gemi Isletmeciligi A.S. ("Active Denizcilik"), and Active Shipping & Management PTE, Ltd. ("Active Shipping & Management"). However, the body of NYK's *Amended Complaint* repeatedly refers to the nebulous entity, "Active." NYK does not explain what named defendant to which "Active" refers or whether "Active" is a non-named third-party.

NYK alleges it entered into a time charter party agreement for use of the M/V Cape Providence with Providence Navigation, Ltd. ("Providence Navigation") (not a party to the suit), on June 20, 2018. NYK alleges Providence Navigation induced it to enter into a novation agreement on or about December 5, 2019, where the owner of the vessel in the charter party agreement was changed to "Riverside Navigation, Ltd." NYK alleges "Active" misrepresented to NYK that the novation was a result of "financing requirements." NYK also alleges that "Active's" fleet manager, Captain Zorer, represented, "this would give us the chance to finance ourselves through our vessel Riverside."[16]

NYK goes on to allege that the time charter party agreement was breached when the M/T Cape Providence was arrested at the Port of Saldanha by the mortgagee of the vessel. NYK alleges the vessel remained arrested for nearly 6 months, resulting in damages to NYK, including: lost profits, costs, value of consumed bunkers, and loss of use of the M/T Cape Providence.[17]

To support the alter-ego theory of liability, NYK alleges the entity "Active" exercises dominion and control over Riverside Navigation, Glory Riverside, Providence Navigation, and "several other single purpose shell companies that serve as nominal registered owners of the

---

[16] R. Doc. 1, ¶¶ 7-17.
[17] R. Doc. 1, ¶¶ 18-25.

vessels in the Active fleet." NYK asserts that "Active" was established and is owned by Mehmet Umur and that Mr. Umur and "Active" are the true and beneficial owners of the M/V Cape Providence and the M/T Riverside.[18] NYK contends that Riverside Navigation and "Active" held themselves out as the owner of the M/T Riverside during the negotiation of the novation agreement and are the true and beneficial owners of the vessel, even though the registered ownership of the M/T Riverside shows ownership through a different entity.[19]

NYK alleges that "Active" executed a mortgage secured by the vessel, M/V Cape Providence. NYK contends the mortgage documentation supports its theory that "Active" is the true owner of all the vessel owner-entities in the "Active" fleet because the mortgage is personally guaranteed by Mehmet Umur and because the single-purpose vessel owners named in the mortgage are "jointly and severally liable for the loan obligations of Mr. Umur." NYK further alleges that Mr. Umur and "Active" hold themselves out as the actual beneficial owners of all the vessels in the active fleet, including the M/V Cape Providence and the M/T Riverside.[20]

NYK contends "Active" knew the M/V Cape Providence would be seized by the ship's preferred mortgage holder and used its dominion and control over Riverside Navigation and Glory Riverside to fraudulently induce NYK into a novation of the charter party agreement. NYK contends "Active" and Riverside Navigation made false representations to continue to receive NYK's hire payments for the use of M/V Cape Providence.[21]

---

[18] The Amended Complaint also alleges that the "Active" fleet owns: M/V Cape Spencer, M/V Cape Northville, M/V Cape Lambert, M/T Fair Seas, M/T Nordic Thunder, M/T Pacific Sky and M/T Southport.
[19] R. Doc. 1, ¶¶ 28-39.
[20] R. Doc. 1, ¶¶ 40-50.
[21] R. Doc. 1, ¶¶ 51-56.

**III.    Applicable Law**

Whenever jurisdictional discovery is permitted, it should be circumspectly monitored, tightly demarcated, and sharply managed.[22] In this case, the Court's jurisdiction hinges on the adequacy of NYK's alter-ego theory.[23] NYK is not entitled to discovery to the extent the record shows that the requested discovery is unlikely to produce facts needed to withstand a Rule 12(b)(1) motion or if the requested discovery would be unnecessarily burdensome or futile.[24]

The alter-ego doctrine applies only if: "(1) the owner exercised complete control over the corporation with respect to the transaction at issue and (2) such control was used to commit a fraud or wrong that injured the party seeking to pierce the veil."[25] Thus, for this Court to have jurisdiction over NYK's suit, NYK must show that "Active" exercised complete control over: Glory Riverside, Providence Navigation, and Riverside Navigation; "Active" used its control over Providence Navigation and Riverside Navigation with respect to the "transaction at issue;" and "Active's" control was used to commit a fraud or wrong that injured NYK. The Fifth Circuit has developed a non-exhaustive list of factors to consider in determining whether one company exercises dominion and control over another, such that an alter ego relationship exists:

> (1)the parent and subsidiary have common stock ownership; (2) the parent and subsidiary have common directors or officers; (3) the parent and subsidiary have common business departments; (4) the parent and subsidiary file consolidated financial statements; (5) the parent finances the subsidiary; (6) the parent caused the incorporation of the subsidiary; (7) the subsidiary operated with grossly inadequate capital; (8) the parent pays salaries and other expenses of subsidiary; (9) the subsidiary receives no business except that given by the parent; (10) the parent uses the subsidiary's property as its own; (11) the daily operations of the two corporations

---

[22] *ING Bank N.V. v. M/V Portland, IMO* 2016 WL 3365426 at *2, *10 (M.D. La. June 16, 2016).
[23] "When one party articulates an alter-ego claim and another attacks it as purportedly insufficient, the extent of the court's admiralty jurisdiction has been placed at issue." *Id.* at *6 (internal citations omitted).
[24] *Id.* at *10 (internal citations omitted).
[25] *Bridas S.A.P.I.C. v. Government of Turkmenistan,* 345 F.3d 347, 359 (5th Cir.2003).

are not kept separate; (12) the subsidiary does not observe corporate formalities.[26]

### IV. Documents Produced with Pending Motions

NYK and Glory Riverside have each submitted a plethora of documents regarding the relationship between the seized ship, the owner of the seized ship, and the facts surrounding the novation and the breach of the charter party agreement. These documents demonstrate that NYK's alter-ego theory rests on extremely thin grounds. As an initial matter, the Court must point out that the vague entity "Active" listed under "The Parties" in NYK's *Amended Complaint*, is not a named or identified party. There are two parties with the word "active" in their title: "Active Denizcilik ve Gemi Isletmeciligi A.S." and "Active Shipping and Management, Pte, Ltd." However, NYK fails to state whether "Active" refers to one of these parties, these two parties collectively, or some other non-named entity. More importantly, a careful review of the documents submitted by both parties indicates an absence of a demonstrable common link, or alter-ego, that exercised dominion over the entities involved in the underlying transaction and the entity that owns the seized ship, the M/T Riverside.

#### A. Documents Related to the Seized Ship: M/T Riverside

The M/T Riverside was seized on September 10, 2020, pursuant to Supplemental Admiralty Rule B. Supplemental Admiralty Rule B "allows a district court to take jurisdiction over a defendant in an admiralty or maritime action by attaching property of the defendant."[27] Glory Riverside provided the Court with documents showing that it was the owner of the M/T Riverside when the vessel was seized in the Middle District of Louisiana. Specifically, Glory Riverside provided documentation showing that the ship was purchased from "Afra Riverside, LLC," on

---

[26] *Oxford Capital Corp. v. U.S.*, 211 F.3d 280, 284 n. 2 (5th Cir.2000).
[27] *Malin Int'l Ship Repair & Drydock, Inc. v. Oceanografia, S.A. de C.V.*, 817 F.3d 241, 244 (5th Cir. 2016) (quoting *Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 421 (5th Cir. 2001)).

August 11, 2020, for $17,700,000.[28] Glory Riverside Navigation, Ltd., was registered in Malta on July 24, 2020, with its directors listed as Halim Umur and Mahmut Nedim Umur. The creation document for Glory Riverside Navigation shows that it was initially capitalized with $1,500.[29]

Glory Riverside is a wholly owned subsidiary of Active Shipholding, Ltd., which is registered in the Marshall Islands and whose directors and shareholders are also Halim Umur and Mahmut Nedim Umur.[30] Glory Riverside entered into a Ship Management Agreement with named-Defendant Active Denizcilik on August 13, 2020.[31] Halim Umur and Mahmut Nedim Umur are shareholders and officers of Active Denizcilik.[32]

The M/T Riverside was owned by Riverside Navigation from June 3, 2009, until it was sold to Afra Riverside, LLC on July 26, 2018.[33] This transaction occurred 17 days before NYK entered into the time charter party agreement with Providence Navigation, approximately a year and half before the novation to the time charter party agreement with Riverside Navigation, and approximately twenty months before the alleged breach of the time charter party agreement via the arrest of the M/V Cape Providence.[34]

### B. Documents Related to Ship Involved in Underlying Transaction: M/V Cape Providence

Providence Navigation, Ltd., has owned the M/T Cape Providence since December 4, 2010.[35] NYK entered into a time charter party agreement with Providence Navigation, Ltd., on June 20, 2018. The document lists the "owner" as "Providence Navigation, Ltd.," the "technical managers" as "Active Denizcilik ve Gemi Isletmeciligi A.S" and the "ship managers" as "Active

---

[28] R. Doc. 31-7.
[29] R. Doc. 34-14.
[30] R. Docs. 31-5, 31-7.
[31] R. Doc. 31-11.
[32] R. Doc. 34-10.
[33] R. Doc. 14-8.
[34] R. Docs. 14-2, 14-3.
[35] R. Doc. 34-12.

Shipping and Management, Pte, Ltd."[36] Clause 44 of the time charter party agreement required NYK's payments to be made to an account held at HSH Nordbank in Germany.[37]

On November 11, 2019, NYK received an email from "Capt. Gurol Zorer," whose title is listed as "Fleet Manager." Zorer's email signature block lists "Active Shipping & Management Pte, Ltd… Acting as Owners' Agents only." The email states:

> We would like to cancel our current charter-party and agree to a new agreement with exactly the same terms where we have Riverside Navigation, Ltd. as the counterpart instead of Providence Navigation, Ltd. This would give us the chance to finance ourselves through our vessel, Riverside. Please find below the details of Riverside Navigation, Ltd.
>
> Riverside Navigation, Ltd.
> Trust Company Complex
> Ajeltake Road
> Ajeltake Islands Majuro
> Marshall Islands
>
> I would very much appreciate if you can check and confirm the change with NYK as soon as possible so that we can start discussions with out Financiers' accordingly…[38]

NYK received a second email from Captain Zorer on December 2, 2019, stating that the reasons for the requested novation was "requirements of the financiers of the owner."[39] NYK entered into the novation agreement with Riverside Navigation on December 5, 2019.[40] The novation agreement changed the location of NYK's payments to a new bank account located in Amsterdam. Mehmet Ali Umur signed the novation agreement on behalf of both Providence Navigation and Riverside Navigation. Mehmet Ali Umur is the minority shareholder of Active Shipping & Management, Pte, Ltd.[41]

---

[36] R. Doc. 14-2.
[37] R. Doc. 14-2, p. 7.
[38] R. Doc. 14-4.
[39] R. Doc. 14-5.
[40] R. Doc. 14-3.
[41] R. Doc. 31-12.

Providence Navigation entered into mortgage agreements with HSH Nordbank on May 15, 2008, and April 12, 2010, secured by the M/V Providence and personally guaranteed by Mehmet Ali Umur.[42] From March of 2019 through March of 2020, Providence Navigation received a series of letters from the bank notifying it of its impending default for failing to make timely payments.[43] On March 13, 2020, the M/V Cape Providence was arrested by the bank.[44] NYK alleges that its damages stem from the arrest of the M/V Cape Providence.

## V.     Discussion

NYK does not have a clear alter-ego theory of liability. This fact alone justifies tight limitations on jurisdictional discovery. "The alter ego doctrine, like all variations of piercing the corporate veil doctrine, is reserved for exceptional cases."[45] NYK's alter ego theory has evolved throughout its pleadings to the point where the Court cannot decipher which juridical or natural person NYK is contends exercised dominion and control over which entity. For example, NYK's *Amended Complaint* alleges that the undefined entity, "*Active*," exercised control over the entities involved in the underlying transaction and Glory Riverside.[46] NYK's *Opposition to the Motion to Vacate* appears to argue the *"The Active Shipping Group,"* "*the Umur family,*" and/or "*the Active Group of Companies*" exercised dominion and control over every entity involved in the litigation.[47] Meanwhile, NYK's *Memorandum in Support* of its motion to compel argues that Glory Riverside Navigation, Ltd. is the alter-ego of Riverside Navigation, Active Denizcilik, and Active Shipping & Management, all of which are "*controlled by the Umur family*."[48] Without a clearly identified

---

[42] R. Doc. 14-9.
[43] R. Doc. 34-7.
[44] R. Doc. 14-6
[45] *Bridas S.A.P.I.C. v. Gov't of Turkmenistan* (*Bridas II*), 447 F.3d 411, 416 (5th Cir.2006) (citation omitted).
[46] R. Doc. 14, ¶ 28 *et seq.*
[47] R. Doc. 34, p. 8, 12.
[48] R. Doc. 54-1, p. 6.

9

alter-ego theory of liability, unfettered discovery requests undermine the Court's duty to circumspectly monitor jurisdictional discovery.[49]

In addition to the fact that NYK has failed to clearly identify an alter-ego, the documents submitted into the record do not indicate a potential common alter-ego between the entities involved in the underlying transaction (Providence Navigation/Riverside Navigation) and the owner of the M/T Riverside (Glory Riverside). The record documents show the M/V Cape Providence and the M/T Riverside share a ship manager, Active Denizcilik. Halim Umur and Mahmet Nedim Umur are shareholders in both Glory Navigation and Active Denizcilik. However, there is no allegation in the *Amended Complaint* or indication in the record documents that Active Denizcilik had any involvement in the novation agreement or the breach of time charter party agreement.[50] Indeed, the email from Captain Zorer, which NYK alleges contains fraudulent misrepresentations, lists his affiliation as "Active Shipping & Management, Pte, Ltd.," whose major shareholder is Olar Thorstensen and minor shareholder is Mehmet Ali Umur.[51] The documents show a familial relationship between Mehmet Ali Umur, (who is affiliated with the M/V Cape Providence, Active Shipping & Management, Pte, Ltd, Riverside Navigation, and Providence Navigation) and his sons, Hamim Umur and Mahmet Nedim Umur (who are affiliated

---

[49] NYK advocates for full responses to its Requests for Production, a corporation deposition, and the deposition of Halim Umur, relying on *ING Bank N.V. v. M/V Portland, IMO* 2016 WL 3365426 (M.D. La. June 16, 2016). This case, as cited herein, calls for tightly demarcated jurisdictional discovery. Furthermore, the case is distinguishable because the party seeking to vacate the attachment in *ING Bank N.V. v. M.V Portland, M.O.* refused to produce any documents and served 144 pages of objections. Additionally, the plaintiff articulated a clear theory of alter-ego liability.

[50] According to the *Amended Complaint* and supporting documents, the time charter party agreement was breached because Providence Navigation, Ltd., who is not a party to this litigation, failed to make its mortgage payments. Notably, Glory Riverside is not a party to the mortgage agreement and the M/T Riverside was not security for the defaulted mortgage.

[51] R. Doc. 31-12.

with the M/T Riverside, Glory Riverside Navigation, and Active Denizcilik). Familial relationship is not a factor in the alter-ego analysis.[52]

The documents indicate that the circumstances and nature of the novation agreement is suspicious.[53] Assuming, *arguendo*, NYK's allegations regarding the novation are sufficient to show "fraud," and the novation qualifies as the "underlying transaction," the existing record documents fail to indicate any relationship between the seized ship and its owner (the M/T Riverside and Glory Riverside) and the underlying transaction.[54] However, the Court will permit NYK to conduct a limited amount of written discovery to attempt to establish the Court's jurisdiction through the production of documents by Glory Riverside, the party that has entered a limited appearance in this matter and owns the M/T Riverside.

---

[52] R. Doc. 31-2, the affidavit of Helim Umur, explains the familial relationship between Mehmet Ali Umur, Halim Umur and Mahmet Ndeim Umur. NYK incorrectly argues that Halim Umur and Mehmet Umur are the shareholders of Glory Riverside and Active Denizcilik. NYK bases this argument on Glory Riverside's response to Interrogatory No. 9, which states, "Mehmet Nedim Umur" is a shareholder of Active Denizcilik (R. Doc. 54-2). This response is clearly a typo. Mahmet Nedim Umur is the shareholder of Active Denizcilik, as shown by the documents produced in R. Doc. 34-10. The typo is understandable, given the difference in spelling is one letter, but the middle name indicates that the response was intended to be "Mahmet Nedim Umur".

[53] The email from Captain Zorer urged NYK to change the name of the "owner" on the time charter party agreement to "Riverside Navigation, Ltd.," which has never owned the M/V Cape Providence. Also, he made a reference to financing through "our vessel Riverside," which was owned by Afra Riverside, LLC, when the email was sent (R. Doc. 14-8).

[54] According to the allegations and the supporting documentation, the entity that appears to be defrauded by the terms of the novation agreement is the mortgage holder because the payments were diverted from a dedicated account at the mortgage holder's bank to a different account in Amsterdam. It is unclear whether the alleged misrepresentations on the named owner of the ship in the time charter party novation or the representation in Captain Zorer's email regarding ownership of the M/T Riverside caused NYK any harm, as it appears the seizure of the M/V Cape Providence would have occurred regardless of these representations. According to the allegations and the supporting documentation, the "underlying transaction" is the breach of the time charter party agreement due to the arrest of the M/V Cape Providence. It is also unclear at this juncture whether the allegations regarding the breach of the time charter party agreement are sufficient to pierce the corporate veil. While complete domination of the corporation is the key to piercing the corporate veil, ... such domination, standing alone, is not enough; some showing of a wrongful or unjust act toward [the party seeking piercing] is required. The Fifth Circuit has subsequently explained that this injustice requirement can be met by showing fraud, an illegal act, or a misuse of the corporate form. *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 416-17 (5th Cir. 2006)(citing *In re Sims,* 994 F.2d 210, 217–18 (5th Cir.1993); *United States v. Jon–T Chems., Inc.,* 768 F.2d 686 (5th Cir.1985); *Edwards Co. v. Monogram Indus., Inc.,* 730 F.2d 977, 984 (5th Cir.1984)). According to NYK's allegations, it was harmed by Providence Navigation's failure to timely make its mortgage payments and, perhaps, by the failure of Providence Navigation or Riverside Navigation to abide by an implied contractual duty under the time charter party agreement to advise NYK of the impending seizure of the vessel. Either of these contractual breaches does not appear to rise to the level of "fraud, illegal act, or misuse of the corporate form."

Considering the content of the large number of documents already submitted into the record by NYK and Glory Riverside, the District Judge's Order for limited jurisdictional discovery, the lack of a clear alter-ego theory of liability, and the applicable case law, the Court finds that the appropriate scope of jurisdictional discovery in this matter will be confined to: (1) the production Glory Riverside Navigation, Ltd.'s documents,[55] (2) related to the 12 alter-ego factors set out by the Fifth Circuit.[56]

Accordingly,

**IT IS HEREBY ORDERED that** Plaintiff, NYK's *Motion to Compel* (R. Doc. 54) is **GRANTED IN PART and DENIED IN PART.**

Defendant, Glory Riverside Navigation, Ltd. is ordered to respond to the following Requests for Production within 21 days of this Order:  2, 18, 31, 33, 34, 45, 46, 55, 57, 62, 89, 90, & 106. Defendant is to respond to Request Nos. 89 & 90, limited to the timeframe it was under contract with Active Denizcilik ve Gemi Isletmeciligi A.S for the management of the R/T Riverside.

Within 7 days of this Order, Plaintiff, NYK, is to propound a revised Request for Production No. 21, with greater specificity on "due diligence" and limiting the request to the alter-

---

[55] This includes the documents referenced in Request Nos. 31, 45, 46 & 55, identifying "Nordic Hail Navigation." The August 11, 2020 purchase agreement for the M/T Riverside (R. Doc. 31-7) raises questions about the alignment between Nordic Hail Navigation, listed as "buyer" and Glory Riverside Navigation, Ltd., listed as "nominee." The other record documents indicate that Glory Riverside Navigation, Ltd., officially owned the M/T Riverside after this transaction, with no indication of Nordic Hail Navigation's role before or after the purchase. The mention of the bareboat charter in the declaration submitted by the Defendant (R. Doc. 31-2) and Nordic Hail's relationship with Glory Riverside in the sale of the M/T Riverside is appropriately within the scope of jurisdictional discovery based on the apparent undercapitalization of Glory Riverside (see footnote 56).

[56] The initial capitalization of Glory Navigation at $1500 on July 24, 2020, and then purchase of the M/T Riverside on August 11, 2020, for $17,700,000 relates to the potential "undercapitalization" of the subsidiary and justifies Glory Riverside's response to Request Nos. 33 & 34.

ego factors explained herein. Defendant shall submit a response within 21 days of receipt of the revised request.

Plaintiff, NYK's *Motion to Compel is* **DENIED** in all other respects.

Should any of the documents produced by Glory Riverside *that have not previously been entered into the record* indicate any of the 12 alter-ego factors are present, NYK may submit, within 60 days of this order, a memorandum not to exceed 10 pages (exclusive of attachments) regarding the justification for a corporate deposition in this matter. Glory Riverside Navigation, Ltd., shall submit any opposition within 30 days, not to exceed 10 pages (exclusive of attachments).

Signed in Baton Rouge, Louisiana, on December 8, 2021.

_____
**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**